**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4092-18T1

TOX DESIGN GROUP, LLC,

      Plaintiff,

v.

RA PAIN SERVICES, PA,

      Defendant/Third-Party
      Plaintiff/Respondent,

v.

CENTRAL TOX, LLC, MICHAEL
SCHMITT, GREGORY KAPLAN,
BARRY CHAFFIN, and GARY BUCK,

      Third-Party Defendants,

and

@MEDICAL LLC, and CHRISTOPHER
RYAN HERTING,

      Third-Party Defendants/
      Appellants.

_____

Argued November 12, 2019 - Decided December 26, 2019

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1485-18.

Michael William Bootier argued the cause for appellants AtMedicalCo, LLC and Christopher Ryan Herting (Buchanan Ingersoll & Rooney PC, attorneys; Michael William Bootier and Shane P. Simon, on the briefs).

Christopher L. Soriano argued the cause for respondent RA Pain Services, PA (Duane Morris, LLP, attorneys; Christopher L. Soriano and Samantha L. Haggerty, of counsel and on the brief).

PER CURIAM

Third-party defendants AtMedicalCo, LLC[1] (AtMedical) and Christopher Ryan Herting, its Chief Executive Officer (collectively the AtMedical Defendants), appeal from an April 12, 2019 Law Division order denying their motion to compel binding arbitration and stay the third-party action filed by defendant/third-party plaintiff RA Pain Services, P.A. (RA Pain) pending the outcome of the arbitration. For the following reasons, we reverse and remand.

---

[1] Improperly pleaded as @Medical, LLC.

I.

RA Pain owns and operates an independent clinical laboratory that provides toxicology and drug testing, medication monitoring, pharmacogenetic testing, and other laboratory services. It sought to engage a manager to provide management and operational services for its laboratory, including billing and collection, finance and accounting, implementation of an information management system, and laboratory design and setup.

On November 2, 2016, RA Pain entered into a Lab Management Services Agreement (LMSA) with AtMedical to provide management and operational services for its laboratory. The LMSA was executed on behalf of RA Pain by its Chief Executive Officer and managing shareholder, Gary Buck, M.D., and on behalf of AtMedical by its Chief Executive Officer, Herting. RA Pain operates in both New Jersey and Pennsylvania while AtMedical operates only in Pennsylvania.

The LMSA contained arbitration and forum selection clauses. Paragraph fifteen of the LMSA (the Forum Selection Clause) states:

> Governing Law. This Agreement shall be deemed to have been made and shall be construed and interpreted in accordance with the laws of the State of New Jersey without regard to the state's conflict of laws provisions. All litigation, claims and actions for the enforcement of this Agreement or otherwise related to this Agreement

3

shall commenced only in the State or Federal courts located in Camden County, New Jersey, and each of the parties hereto expressly submits to the personal jurisdiction of such courts in any such litigation.

[(Emphasis added).]

Paragraph thirty-two of the LMSA (the Arbitration Clause) states:

Resolution of Disputes. In the event that a dispute arises between two or more Parties under this Agreement or regarding the subject matter of this Agreement, the Parties will first negotiate in good faith for up to thirty (30) days to try and resolve the dispute. If the dispute cannot be settled through negotiation within thirty (30) days, such dispute shall be settled by final and binding arbitration to be conducted in Philadelphia, Pennsylvania by one arbitrator with at least ten (10) years of experience in health care matters, such arbitration to be conducted in accordance with the commercial arbitration rules of the American Arbitration Association ("AAA").

[(Emphasis added).]

AAA Rule 7 was expressly incorporated into the LMSA. It sets forth the broad jurisdiction of the arbitrator. Subsection (a) of the rule provides:

The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

Subsection (b) of the rule provides:

> The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

RA Pain was subsequently named as a defendant in an action brought by plaintiff Tox Design Group, LLC. RA Pain, in turn, filed a second amended answer and third-party action against the AtMedical Defendants and six other third-party defendants, including Buck. The third-party complaint alleged the AtMedical Defendants were liable for: (1) civil conspiracy (count I); (2) aiding and abetting breach of fiduciary duty (count IV); (3) breach of the LMSA (count XII); (4) breach of the covenant of good faith and fair dealing (count XIII); (5) promissory estoppel (count XIV); (6) unjust enrichment (count XV); and (7) negligence (count XVI).[2]

The AtMedical Defendants moved to compel binding arbitration of the claims asserted by RA Pain and stay the third-party action pending the outcome of the arbitration. They contended that the Arbitration Clause required RA Pain to submit its claims to binding arbitration. The AtMedical Defendants further

---

[2] The remaining counts pertain to claims against other third-party defendants not involved in this appeal.

A-4092-18T1

contended that the Forum Selection Clause is "essentially . . . a fallback provision to the arbitration provision" that would be used "in the event that the arbitration is unsuccessful." By way of example, they aver that the Forum Selection Clause requires applications to enforce arbitration subpoenas and awards to be filed in the state or federal court in Camden County. The AtMedical Defendants further argued that when parties incorporate the AAA rules into a contract, the AAA rules "become express terms of the contract itself." They pointed to the headings listed in the LMSA: the Forum Selection Clause falls under "Governing Law," while the Arbitration Clause falls under "Resolution of Disputes."

The AtMedical Defendants emphasize that the LMSA was a contract between two sophisticated commercial entities, not individual consumers. They therefore contend that the enhanced waiver of rights language requirement imposed on consumer contract arbitration provisions do not apply to the LMSA.

Finally, the AtMedical Defendants contend RA Pain provided no facts for the motion court to consider with respect to the validity of the agreement. It submitted no affidavit or certification from any member or representative of RA Pain attesting to any underlying facts. Accordingly, the motion court could not consider the facts asserted in the unsworn statement of counsel.

A-4092-18T1

RA Pain opposed the motion. It argued that the LMSA's Forum Selection Clause and Arbitration Clause could not be complied with at the same time thus making them irreconcilable. It further argued that the parties must have a consensual understanding for an arbitration clause to be enforceable. In that regard, RA Pain asserts on appeal:

> Dr. Buck has since been removed from his position at RA Pain due to his involvement in procuring fraudulent agreements, working hand in glove with Christopher Ryan Herting. RA Pain shareholders, apart from Dr. Buck, never assented to the arbitration provision. . . . Appellants, Dr. Buck's co-conspirators, should not be able to take advantage of the undisclosed arbitration clause.

RA Pain did not submit any affidavits or certifications based on personal knowledge in support of its contentions. Notably, RA Pain did not argue that the entire LMSA is invalid or unenforceable. Nevertheless, it contended the court should permit limited discovery of the enforceability of the arbitration clause before deciding the motion. The court did not address these contentions.

The court was skeptical of the AtMedical Defendant's interpretation of the interplay between the Forum Selection and Arbitration Clauses, noting that the Forum Selection Clause "doesn't say . . . in the event the arbitration fails this clause applies." In response, the AtMedical Defendants argued that the clear majority of federal circuits, including the Third Circuit, have found "that

7

incorporation [of] . . . the AAA rules constitutes an effective delegation to the arbitrator." The court did not address this issue.

The court concluded that applicable precedent required the arbitration agreement to make "clear that the parties have waived their access to the court by electing arbitration," through "clear and unambiguous language." Ultimately, it found "this agreement clearly . . . states two different ways to commence an action," through either arbitration or litigation, with "exclusive jurisdiction in Camden County courts." The judge determined the Forum Selection and Arbitration Clauses were inconsistent, ambiguous, and thus unenforceable. Accordingly, the judge denied the motion to compel arbitration and stay the action pending outcome of the arbitration.

This appeal followed as of right.[3] The AtMedical Defendants raise the following points for our consideration:

> I. AN ORDER COMPELLING OR DENYING ARBITRATION, IN WHOLE OR IN PART, IS APPEALABLE AS OF RIGHT (UNIQUE TO APPEAL).
>
> II. THE MOTION COURT ERRED BY DECLINING TO ESPOUSE THE EMPHATIC FEDERAL AND

---

[3] Any order compelling or denying arbitration is deemed a final judgment for appeal purposes and is appealable as of right. R. 2:2-3(a); GMAC v. Pittella, 205 N.J. 572, 583-86 (2011).

A-4092-18T1

STATE POLICIES FAVORING ARBITRATION AS A METHOD OF DISPUTE RESOLUTION.

III. THE MOTION COURT ERRED BY HOLDING THAT THE ARBITRATION CLAUSE AND FORUM SELECTION PROVISION WERE IRRECONCILABLE BECAUSE THOSE TWO PROVISIONS ARE COMPLEMENTARY, NOT CONFLICTING.

A. The Applicable Legal Framework Concerning the Interplay between Arbitration Clauses and Forum Selection Provisions demonstrates that such Provisions are Complementary and that Forum Selection Provisions rarely, if ever, Waive the Right to Arbitration (Unique to Appeal).

B. The Forum Selection Provision in the Agreement in this case does not Invalidate the Arbitration Clause because it does not even Mention, let alone Preclude, Arbitration (Unique to Appeal).

IV. THE MOTION COURT ERRED BY NOT DELEGATING THE ISSUE CONCERNING THE INTERPLAY BETWEEN THE ARBITRATION CLAUSE AND FORUM SELECTION PROVISION – AND ANY OTHER CHALLENGES TO THE AGREEMENT – BECAUSE THE ARBITRATION CLAUSE'S INCORPORATION OF THE AAA RULES ESTABLISHED A CLEAR AND UNMISTAKABLE DELEGATION OF ARBITRABILITY TO THE ARBITRATOR.

A. Parties to an Arbitration Agreement May Delegate Arbitrability Issues to the Arbitrator.

9

B. The Incorporation of the AAA Rules Constitutes a Clear and Unmistakable Delegation of Arbitrability.

## II.

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16 (2018), governs arbitration agreements involving interstate commerce. Because RA Pain operates in both New Jersey and Pennsylvania, the LMSA affects interstate commerce. See 9 U.S.C. § 1 (defining interstate commerce as "commerce among the several States or with foreign nations"). Therefore, the LMSA is governed by the FAA.

Section 2 of the FAA, 9 U.S.C. § 2, the FAA's enforcement provision, "reflects . . . 'a liberal federal policy favoring arbitration.'" NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). That said, a party opposing arbitration may raise defenses that "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A trial court reviewing an arbitration agreement must determine "gateway question[s]," such as (1) "whether the parties are bound by a given arbitration clause," and (2) "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." Howsam v. Dean Witter Reynolds,

Inc., 537 U.S. 79, 83-84 (2002). However, "[u]nder federal arbitration law, it is ordinarily the role of an arbitrator and not the courts to interpret ambiguous provisions of an arbitration agreement." Delta Funding Corp. v. Harris, 189 N.J. 28, 38 (2006) (citing Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 451-53 (2003) (plurality opinion)).

"In applying the [FAA], the United States Supreme Court has provided substantial guidance on the question of whether arbitration should be compelled in situations [like] this case." Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019). Moreover, "[o]ur courts look to federal arbitral decisions . . . 'for guidance.'" Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 280 (2010) (quoting N.J. Tpk. Auth. v. Local 196, I.F.P.T.E., 190 N.J. 283, 292 (2007)).

Our review of orders permitting or denying arbitration is de novo because "[t]he enforceability of arbitration provisions is a question of law; therefore, it is one to which [an appellate court] need not give deference to the analysis by the trial court." Goffe, 238 N.J. at 207 (citing Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016)).

## III.

"When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." Henry Schein, Inc. v. Archer & White Sales, Inc., ___ U.S. ___, ___, 139 S. Ct. 524, 529 (2019). The AtMedical Defendants contend that because the Arbitration Clause incorporates the AAA rules, it provides "clear and unmistakable evidence that the parties agreed to submit arbitrability issues – including issues concerning the validity or enforceability of the Arbitration Clause – to the arbitrator." We agree.

"It appears that '[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'" Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746, 763 (3d Cir. 2016) (alteration in original) (citations omitted); see also Preston v. Ferrer, 552 U.S. 346, 362-63 (2008) (indicating incorporation of the AAA rules weighs in favor of arbitration).

We find the reasoning in Chesapeake Applachia to be persuasive. We conclude that the incorporation of AAA Rules 7(a) and 7(b) into the Arbitration

Clause clearly and unambiguously expressed the parties' intent to empower the arbitrator to determine arbitrability.

RA Pain avers its claims of civil conspiracy, aiding and abetting breach of fiduciary duty, negligence, and fraud are outside the scope of the arbitration clause. Our opinion in Curtis v. Cellco P'ship, 413 N.J. Super. 26 (2010) is instructive. There, we examined the language of an arbitration agreement to determine whether a party waived his right to judicial adjudication of their statutory rights under the Consumer Fraud Act and their common law claims for breach of contract and fraud. Id. at 38-39. We engaged in the following analysis:

> Turning to the Agreement's language, we note it mandates the waiver of a jury trial in favor of submitting "any controversy or claim arising out of or related to this [A]greement" or "any service provided under or in connection with this [A]greement" to arbitration. . . . These provisions are succinctly stated, unambiguous, easily noticeable, and specific with regard to the actual terms and manner of arbitration.
>
> . . . .
>
> Regarding the scope of the arbitration clause, "[c]ourts have generally read the terms 'arising out of' or 'relating to' [in] a contract as indicative of an 'extremely broad' agreement to arbitrate any dispute relating in any way to the contract." Griffin v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010) (quoting Angrisani v. Fin. Tech.

> Ventures, L.P., 402 N.J. Super. 138, 149 (App. Div. 2008)).  Such broad clauses have been construed to require arbitration of any dispute between the contracting parties that is connected in any way with their contract.  Ibid.
>
> [Id. at 37-38 (alterations in original) (last citation omitted).]

We therefore held that "the Agreement's terms made clear that the subject matter of plaintiff's dispute, which arises out of the terms of the Agreement, must be vindicated in an arbitral forum."  Id. at 39 (citing Leodori v. CIGNA Corp., 175 N.J. 293, 302-03 (2003)).

In this case, the Arbitration Clause clearly and unambiguously provides that "a dispute . . . between two or more Parties under this Agreement or regarding the subject matter of this Agreement . . . shall be settled by final and binding arbitration."  This broad, easily understood language gives "reasonable notice" of the waiver of the "right to judicial adjudication" of contractual disputes, Curtis, 413 N.J. Super. at 38 (citing Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577, 586 (App. Div. 2004)), and manifests an intention "that disposition of disputes will occur outside the courts," ibid.

RA Pain argues that many of its "claims do not directly relate to the LMSA, but rather to other [alleged] fraudulent schemes perpetrated by [AtMedical]."  Even so, RA Pain's common law claims against the AtMedical

14

Defendants for civil conspiracy, aiding and abetting breach of fiduciary duty, breach of the LMSA, breach of the covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, and negligence are inherently related to the LMSA. Indeed, there would be no relationship between RA Pain and AtMedical absent the Agreement.

RA Pain also argues that its shareholders lacked mutual assent to be bound by the Arbitration Clause. It contends the trial court should have permitted limited discovery on this issue. However, its argument that there was no mutual shareholder assent was not supported by any affidavits or certifications of individuals with personal knowledge or exhibits. See R. 1:6-6 (requiring that motion papers be based "on affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify").

Buck executed the LMSA on behalf of RA Pain in his capacity as its managing partner, president, and CEO. The record reflects that Buck entered into several other agreements, prior to the LMSA, on behalf of RA Pain. More fundamentally, the parties operated under the LMSA for more than a year before RA Pain first claimed that the Arbitration Clause was included in the LMSA

A-4092-18T1

without the assent of the other partners. Notably, the record on appeal does not disclose who prepared the LMSA.

Under these circumstances, we hold that the enforceability of the Arbitration Clause, including any alleged lack of shareholder assent, is to be determined by the arbitrator, subject to the applicable procedures under the AAA rules, including any right to limited discovery.

Finally, RA Pain's reliance on Atalese v. U.S. Legal Services. Group, L.P., 219 N.J. 430 (2014) is misplaced. The Atalese standard has not been extended beyond consumer and employment contracts. It does not apply to commercial arbitration agreements between commercial entities. GAR Disability Advocates, LLC v. Taylor, 365 F. Supp. 3d 522, 531 (D.N.J. 2019).

We hold the trial court erred by denying the motion to compel binding arbitration of RA Pain's claims against the AtMedical Defendants. Any disputes concerning arbitrability of the LMSA shall likewise be submitted to binding arbitration. The third-party complaint shall be stayed in its entirety pending outcome of the arbitration.

Reversed and remanded for entry of an order consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4092-18T1