992 A.2d 795 (2010)
413 N.J. Super. 26
Robert C. CURTIS, Plaintiff-Appellant,
v.
CELLCO PARTNERSHIP d/b/a Verizon Wireless, Defendant-Respondent.
No. A-5863-07T2
Superior Court of New Jersey, Appellate Division.
Decided April 15, 2010.
Argued January 5, 2010.
Re-Argued Telephonically March 30, 2010.
*797 Gregory Gogo, Trenton, argued the cause for appellant.
Frank A. Luchak, Princeton, argued the cause for respondent (Duane Morris, LLP, attorneys; Mr. Luchak and Michael W. O'Hara, on the brief).
Before Judges PARRILLO, LIHOTZ and ASHRAFI.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
In this matter, we examine whether plaintiff's claims against defendant for consumer fraud fall within the scope of the arbitration clause of the parties' consumer service agreement. Plaintiff Robert C. Curtis became dissatisfied with the quality of the cellular telephone service provided by defendant, Cellco Partnership d/b/a Verizon Wireless, and refused to pay the outstanding account balance. Defendant reported plaintiff's non-payment to national credit bureaus, which he maintains negatively impacted his credit score and impeded his ability to procure desired financing. Plaintiff filed this action alleging, among other things, violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to106.[1] On defendant's motion, the trial court dismissed plaintiff's complaint, concluding the expansive language of the parties' service contract compelled arbitration. On appeal, plaintiff argues the service agreement was a contract of adhesion and, to be enforceable, must specifically include a waiver of statutory claims. Plaintiff maintains the contract with defendant lacks this specific waiver. Following our plenary review, we disagree and affirm.
Plaintiff entered into a "Verizon Wireless Customer Agreement" (the Agreement) with defendant to provide cellular telephone service during the period November 1, 2004 to November 1, 2006. The Agreement required a $175 payment for termination of the Agreement prior to its end date. We recite additional Agreement provisions relevant to our review.
The first paragraph of the document stated:
We're Verizon Wireless. Please carefully read this Agreement, including the calling plan or plans you've chosen, before filing it in a safe place.
This agreement covers important topics such as when it begins, how long it lasts, fees for early termination and late payments, our rights to change the agreement and your wireless service, limitations of liability, use of information about you, and settlement of disputes by arbitration instead of in court.
The Agreement included expansive provisions for dispute resolution and mandatory arbitration. These terms were distinguished from the Agreement's other terms by a box placed around them and the use of capitalized and bolded print. The introductory clause of this section states:
Dispute Resolution And Mandatory Arbitration
∞[2] INSTEAD OF SUING IN COURT, WE EACH AGREE TO SETTLE DISPUTES (EXCEPT CERTAIN SMALL CLAIMS) ONLY BY ARBITRATION. THE RULES IN ARBITRATION ARE DIFFERENT. THERE'S NO JUDGE OR JURY, *798 AND REVIEW IS LIMITED, BUT AN ARBITRATOR CAN AWARD THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME LIMITATIONS STATED IN THE AGREEMENT AS A COURT WOULD.
The Agreement expressed that its arbitration provisions were governed by the Federal Arbitration Act (FAA), 9 U.S.C.A. § 1 to -16. In describing the disputes covered, the Agreement stated:
ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATED TO THIS AGREEMENT, ... OR ANY PRODUCT OR SERVICE PROVIDED UNDER OR IN CONNECTION WITH THIS AGREEMENT ... WILL BE SETTLED BY ONE OR MORE NEUTRAL ARBITRATORS.... THIS DOESN'T CHANGE YOUR SUBSTANTIVE RIGHTS, JUST THE POTENTIAL FORUMS FOR RESOLVING DISPUTES. IN ADDITION YOU CAN STILL BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF APPROPRIATE FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCIES AND THEY CAN STILL, IF THE LAW ALLOWS, SEEK RELIEF AGAINST U.S. ON YOUR BEHALF.
In a separately numbered paragraph, in bold font, the Agreement provided: "IF AN APPLICABLE STATUTE PROVIDES FOR AN AWARD OF ATTORNEY'S FEES, AN ARBITRATOR CAN AWARD THEM, TOO." Lastly, the Agreement stated: "IF FOR SOME REASON THESE ARBITRATION REQUIREMENTS DON'T APPLY, WE EACH WAIVE ANY TRIAL BY JURY."
Defendant also gave plaintiff a Verizon Wireless Customer Information Overview (CIO). That document was not designed to "replace or supplement" the Agreement but rather to "succinctly summarize[ ] the terms and conditions of the Customer Agreement." Using bold print, the CIO reiterated the basic parameters for using arbitration to resolve disputes. It too explained, "all such customer disputes (except certain small claims) will be resolved through arbitration, not with a judge or jury." Immediately before the account holder's signature, the CIO set forth, in bolded capital letters, the signor's agreement to accept the terms of the Agreement, the $175 early termination fee, and the "SETTLEMENT OF DISPUTES BY ARBITRATION AND OTHER MEANS INSTEAD OF JURY TRIALS[.]"
Plaintiff's acceptance of these terms was confirmed by his electronic signature, as well as his activation and use of the wireless phone service plan. The first page of the Agreement included a procedure to cancel the Agreement "within fifteen days of accepting" if its terms were objectionable. Plaintiff did not cancel the Agreement.
When he purchased the wireless service, plaintiff provided his home address; however, defendant did not disclose the limited signal strength and quality of transmission and reception in that location. Plaintiff found the cellular telephone service in his home was unreliable due to "dropped calls, poor reception and coverage gaps." A technician for defendant later told plaintiff that, due to a lack of transmission equipment, the signal at plaintiff's home address was marginal to non-existent. Based upon defendant's prior knowledge of the lack of reliable wireless service in his area, plaintiff insisted defendant breached the service agreement from its inception. Plaintiff refused to satisfy the payment obligation on his wireless account and canceled his service before the conclusion of the Agreement term. An August 9, 2006 invoice *799 showed a balance due, including an early termination fee, of $769.66.
Plaintiff called a customer service representative to complain of the problems he experienced and to dispute his obligation to satisfy the sum claimed due. As a result of those conversations, plaintiff believed defendant consented to relieve him of the outstanding obligation. However, on September 22, 2006, and June 22, 2007, plaintiff received notices from collection agencies seeking payment on defendant's behalf.
In July 2007, plaintiff applied for a home equity loan. He learned that, beginning in December 2006 and for several successive months thereafter, defendant reported plaintiff's nonpayment to credit reporting agencies. This adversely affected plaintiff's credit rating, and he was deemed ineligible for a desired lower interest rate on an equity line of credit.
Plaintiff filed this action on December 12, 2007. He sought to amend his complaint and transfer the matter from the Special Civil Part to the Law Division. R. 6:4-1. Defendant opposed the motion and moved to enforce the arbitration clause of the Agreement. The court granted plaintiff's request to transfer the matter to the Law Division for the purpose of consideration of the motions, then granted defendant's motion to dismiss the complaint and compel arbitration. Plaintiff appealed.
We have little trouble concluding the Agreement contained a valid and binding provision for arbitration of disputes. Martindale v. Sandvik, Inc., 173 N.J. 76, 86, 800 A.2d 872 (2002). The arbitration provisions are sufficiently clear, unambiguously worded, satisfactorily distinguished from the other Agreement terms, and drawn in suitably broad language to provide a consumer with reasonable notice of the requirement to arbitrate all possible claims arising under the contract. Plaintiff's arguments to the contrary lack merit. R. 2:11-3(e)(1)(E).
We must examine, however, whether the contractual language "clearly and unmistakably established" that plaintiff's CFA claims fall within the scope of the arbitration clause of the Agreement. In this regard, some basic principles apply.
First, we note the FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt Info. Scis., Inc. v. Bd. of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488, 500 (1989); See Martindale, supra, 173 N.J. at 84, 800 A.2d 872. Likewise, New Jersey courts favor arbitration as a means of resolving disputes, embracing the federal policy preferring this method of alternative dispute resolution. Ibid.; EPIX Holdings Corp. v. Marsh & McLennan Cos., 410 N.J.Super. 453, 471, 982 A.2d 1194 (App.Div.2009); Bruno v. Mark MaGrann Assocs., 388 N.J.Super. 539, 545, 909 A.2d 768 (App.Div.2006). "Because of the favored status afforded to arbitration, `[a]n agreement to arbitrate should be read liberally in favor of arbitration.'" Griffin v. Burlington Volkswagen, Inc., 411 N.J.Super. 515, 518, 988 A.2d 101 (App.Div.2010) (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 132, 773 A.2d 665 (2001)). See Martindale, supra, 173 N.J. at 84, 800 A.2d 872. Accordingly, "courts operate under a `presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" EPIX Holdings, supra, 410 N.J.Super. at 471, 982 A.2d 1194 (quoting *800 Caldwell v. KFC Corp., 958 F.Supp. 962, 973 (D.N.J.1997)).
Second, "agreements to arbitrate are not violative of public policy." Martindale, supra, 173 N.J. at 92, 800 A.2d 872 (citing Marchak v. Claridge Commons, Inc., 134 N.J. 275, 281-82, 633 A.2d 531 (1993)). It is well-settled "that parties to an agreement may waive statutory remedies in favor of arbitration[.]" Garfinkel, supra, 168 N.J. at 131, 773 A.2d 665; see Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 78 N.J. 122, 140, 393 A.2d 267 (1978) (observing that the "propriety of a contractual waiver of statutory rights is well-established"). "Only `if a statute or its legislative history evidences an intention to preclude alternate forms of dispute resolution, will arbitration be an unenforceable option.'" EPIX Holdings, supra, 410 N.J.Super. at 477, 982 A.2d 1194 (quoting Alamo Rent A Car, Inc. v. Galarza, 306 N.J.Super. 384, 389, 703 A.2d 961 (App.Div.1997)).
Courts have determined arbitration is an appropriate forum to vindicate statutory rights asserted under: the Family Leave Act, N.J.S.A. 34:11B-1 to -16, Martindale, supra, 173 N.J. at 81-83, 800 A.2d 872; the Civil Rights Act, N.J.S.A. 10:6-1 to -2, EPIX Holdings, supra, 410 N.J.Super. at 468-75, 982 A.2d 1194; the CFA, Gras v. Assoc. First Capital Corp., 346 N.J.Super. 42, 52-54, 786 A.2d 886 (App. Div.2001), certif. denied, 171 N.J. 445, 794 A.2d 184 (2002); the Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1 to-6.2., Caruso v. Ravenswood Developers, Inc., 337 N.J.Super. 499, 508, 767 A.2d 979 (App.Div.2001); the Law Against Discrimination, N.J.S.A. 10:5-1 to -49, Young v. Prudential Ins. Co., 297 N.J.Super. 605, 608-09, 688 A.2d 1069 (App.Div.1997); and the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14, Singer v. Commodities Corp., 292 N.J.Super. 391, 405-07, 678 A.2d 1165 (App.Div.1996).
Third, because an agreement to arbitrate is a contract, "only those issues may be arbitrated which the parties have agreed shall be." Garfinkel, supra, 168 N.J. at 132, 773 A.2d 665 (citing In re Arbitration Between Grover & Universal Underwriters Ins. Co., 80 N.J. 221, 228, 403 A.2d 448 (1979)). Accordingly, the examination of the scope of any arbitration provision must be on "a case-by-case basis." Rockel v. Cherry Hill Dodge, 368 N.J.Super. 577, 580, 847 A.2d 621 (App. Div.), certif. denied, 181 N.J. 545, 859 A.2d 689 (2004). We must determine whether the parties entered a valid agreement to arbitrate the issues presented in plaintiff's complaint based upon state contract law. EPIX Holdings, supra, 410 N.J.Super. at 470, 982 A.2d 1194.
Finally, in the context of consumer agreements,
[a] contractual provision in which a consumer elects arbitration as the exclusive remedy [ ] must [ ] be read in light of its effect on the consumer's right to sue. A clause depriving a citizen of access to the courts should clearly state its purpose. The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue.
[Marchak, supra, 134 N.J. at 282, 633 A.2d 531.]
Arbitration of statutory claims is enforceable when the contract provisions (1) contain language reflecting a general understanding of the type of claims included in the waiver; or (2) provide that, by signing, the consumer agrees to arbitrate "all statutory claims arising out of the relationship," or any claim or dispute based on a federal or state statute. Gras, supra, 346 N.J.Super. at 56-57, 786 A.2d 886.
*801 In examining whether the scope of an arbitration clause encompasses a CFA claim, we understand the tension between, on the one hand, the policy favoring liberal construction of arbitration provisions in a contract and, on the other hand, the CFA's intended effect of rooting out consumer fraud. Rockel, supra, 368 N.J.Super. at 580, 847 A.2d 621; Gras, supra, 346 N.J.Super. at 53, 786 A.2d 886. When these two policies are in "equipoise," we have held that enforcement of arbitration clauses turns on whether the parties' contract "contain[s] the appropriate attributes." Rockel, supra, 368 N.J.Super. at 580, 847 A.2d 621; see Gras, supra, 346 N.J.Super. at 54, 786 A.2d 886.
Relying on Garfinkel and Gras, plaintiff argues that even if the terms constitute a valid and legal contract to arbitrate, they do not unambiguously require arbitration of "federal and/or state statutory claims." He suggests the Agreement's arbitration provisions, although extensive, are limited because they do not expressly "disclose that by signing the consumer agrees to arbitrate any claim or dispute based on a federal or state statute." We do not agree.
In Garfinkel, supra, 168 N.J. at 129, 773 A.2d 665, the arbitration clause in the plaintiff's employment contract sought to encompass LAD claims. The clause did not contain a waiver of a jury trial, a right expressly granted to LAD claimants. Id. at 130-31, 773 A.2d 665. The Court concluded the LAD's choice of forum provision was of vital importance and an arbitration agreement must "clearly and unmistakably" evidence an employee's intent to abandon that right. Id. at 136, 773 A.2d 665 (internal quotation omitted).
We have found nothing in the CFA that precludes vindication of a consumer's "statutory rights in the arbitral forum." Gras, supra, 346 N.J.Super. at 53, 786 A.2d 886. While holding that a waiver of statutory rights "must be clear and explicit," id. at 54, 786 A.2d 886, such waivers need not specifically refer to every imaginable statute. Id. at 56, 786 A.2d 886. In Gras, we concluded the policy in favor of the arbitration of disputes sufficiently outweighed the plaintiffs' statutory right to present their CFA claims to a jury in a court of law when the arbitration provisions were "specific enough to inform plaintiffs that they were waiving their statutory rights to litigation in a court." Id. at 57, 786 A.2d 886.
Thus, it is well-established that CFA claims may be the subject of arbitration and need not be exclusively presented in a judicial forum. Rockel, supra, 368 N.J.Super. at 580, 847 A.2d 621; Gras, supra, 346 N.J.Super. at 52-53, 786 A.2d 886. Accordingly, nothing precludes plaintiff's presentation of his CFA claims in arbitration if the parties' agreement so provides.
Turning to the Agreement's language, we note it mandates the waiver of a jury trial in favor of submitting "any controversy or claim arising out of or related to this [A]greement" or "any service provided under or in connection with this [A]greement" to arbitration. Moreover, the Agreement defines claims to include the statutory right for reimbursement of attorney's fees. These provisions are succinctly stated, unambiguous, easily noticeable, and specific with regard to the actual terms and manner of arbitration.
Here, the language of the arbitration clauses do not suffer the same flaw identified in Garfinkel, as they include a clear and explicit waiver of the right to judicial adjudication. Reinforced by information in the CIO and the statement containing plaintiff's signature signifying acceptance, we determine the provisions requiring arbitration *802 are unambiguous, highlighted, and easily understood.
Regarding the scope of the arbitration clause, "[c]ourts have generally read the terms `arising out of' or `relating to' [in] a contract as indicative of an `extremely broad' agreement to arbitrate any dispute relating in any way to the contract." Griffin, supra, 411 N.J.Super. at 518, 988 A.2d 101 (quoting Angrisani v. Financial Tech. Ventures, L.P., 402 N.J.Super. 138, 149, 952 A.2d 1140 (App.Div.2008)). Such broad clauses have been construed to require arbitration of any dispute between the contracting parties that is connected in any way with their contract. Ibid.; EPIX Holdings, supra, 410 N.J.Super. at 472, 982 A.2d 1194.
The Agreement's arbitration clauses are "clear and unambiguous" in their intent and purpose to inform the reader that all disputes must be presented in an arbitral forum, not a court. Martindale, supra, 173 N.J. at 96, 800 A.2d 872; see Rockel, supra, 368 N.J.Super. at 581, 847 A.2d 621 (rejecting applicability of an arbitration clause for CFA claims as the parties' two agreements were highly ambiguous with disparate clauses regarding arbitration). While the language does not expressly identify the applicability of arbitration to federal and state statutory claims, which would be dispositive pursuant to our holding in Gras, it unmistakably informs a consumer accepting its terms for wireless telephone service that he or she must settle "any controversy or claim arising out of or related to th[e] agreement" in arbitration, where "there is no judge or jury." Finally, the Agreement mentions statutory claims for attorney's fees related to any dispute, which can be awarded in an arbitration proceeding.
Overall, the Agreement employs language reflecting that disposition of disputes will occur outside the courts. The terms gave plaintiff reasonable notice that, upon signing, he was waiving his right to judicial adjudication. Rockel, supra, 368 N.J.Super. at 586, 847 A.2d 621. Further, the Agreement makes apparent that a party does not forgo any substantive rights in submitting resolution to an arbitrator, rather than a court. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444, 456 (1985); Martindale, supra, 173 N.J. at 93, 800 A.2d 872. Under these circumstances, the Agreement reflects a willingness to arbitrate all disputes, contractual, as well as statutory, flowing from those disputes.[3]
Scrutinizing plaintiff's specific claims, we note he sought damages for breach of contract, fraud (alleging the early termination fee was in reality an undisclosed liquidated damage clause), and CFA violations resulting from defendant's attempted collection efforts. The expressed factual allegations are that defendant knew its wireless service was inadequate at the inception of the contract and that its subsequent conduct to collect the fees for service and an early termination fee were actionable. Each of these claims "touch matters covered by the parties' contract." EPIX Holdings, supra, 410 N.J.Super. at 473, 982 A.2d 1194 (quotations and citations omitted). We determine the Agreement's terms made clear that the subject matter of plaintiff's dispute, which arises out of the terms of the Agreement, must be vindicated in an arbitral forum. Leodori v. CIGNA Corp., 175 *803 N.J. 293, 302-03, 814 A.2d 1098 (2003). Consequently, "[c]ompelling arbitration under these circumstances is fair and equitable." Martindale, supra, 173 N.J. at 96, 800 A.2d 872.
We also reject plaintiff's argument implicating procedural unconscionability, suggesting that the Agreement is unenforceable because it contained "a hidden term" that is, the use of the symbol "∞." Plaintiff submits the insertion of the infinity symbol is not disclosed and extends the contract term for arbitration for an unspecified period.
The infinity symbol was defined in the third paragraph of the Agreement's first page, which states: "THIS AGREEMENT STARTS WHEN YOU ACCEPT. Paragraphs marked `∞' continue after it ends." Thereafter, the symbol is used eleven times in the Agreement. Relevant to our review is its insertion immediately prior to the description of the use of arbitration.
In considering this argument, the trial judge found
there is nothing unfair or unconscionable about that language....
With regard to the inclusion of the symbol infinity, even if the [c]ourt were to find that was somehow a hidden term, which the [c]ourt does not find, the [c]ourt finds that the dispute herein arises based upon and during the existence of the two-year contract that plaintiff signed, which went from November 1st, 2004 through November 1st, 2006.
We reject plaintiff's arguments that the symbol was defined "in very small type... not explained in any other section of the document and it is printed but not explained in the section dealing with mandatory arbitration where the larger bold print capital letters appear[.]" We cannot agree the symbol was hidden. It was defined in the beginning of the Agreement. Plaintiff had the opportunity and ability to read the plain language of the Agreement and was fairly apprised that he was not giving up his ability to vindicate substantive rights. Nothing in the record suggests he was infirmed, unsophisticated, confused or even had questions about the Agreement's terms. Also, there is no "gross disparity in the relative bargaining positions of the parties." Muhammad v. County Bank of Rehoboth Beach, DE, 189 N.J. 1, 18, 912 A.2d 88 (2006). In the absence of any unfair circumstances, we discern none of the indicia of procedural unconscionability. See Sitogum Holdings, Inc. v. Ropes, 352 N.J.Super. 555, 564-65, 800 A.2d 915 (Ch.Div.2002) (stating procedural unconscionability, "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process").
We conclude the parties agreed to arbitrate, plaintiff's statutory claims fall within the scope of those provisions, and his claims can be vindicated in arbitration. Accordingly, plaintiff is bound to the Agreement, which mandates disputes be arbitrated. Martindale, supra, 173 N.J. at 92-94, 800 A.2d 872; Gras, supra, 346 N.J.Super. at 53-54, 786 A.2d 886.
Affirmed.
NOTES
[1] Plaintiff's complaint is not included in the record. We have been provided with only a proposed amended complaint, which the trial court had not allowed to be filed.
[2] The use of the infinity symbol is discussed infra at 413 N.J.Super at 39-40, 992 A.2d at 803.
[3] Plaintiff cites two unpublished opinions as support of his arguments. We have reviewed these two opinions and conclude they are easily distinguishable from the facts at bar. Regardless, unpublished opinions do not constitute precedent and are not binding on this court. R. 1:36-3.