**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0230-19T1

TOX DESIGN GROUP, LLC,

     Plaintiff,

v.

RA PAIN SERVICES, PA,

     Defendant/Third Party
     Plaintiff-Respondent,

v.

CENTRAL TOX, LLC, MICHAEL
SCHMITT, GREGORY KAPLAN,
BARRY CHAFFIN, @MEDICAL
LLC, and CHRISTOPHER RYAN
HERTING,

     Third-Party Defendants,

and

GARY BUCK,

     Third-Party Defendant-
     Appellant.

_____

Argued telephonically March 25, 2020 –
Decided May 4, 2020

Before Judges Sabatino, Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law
Division, Camden County, Docket No. L-1485-18.

John A. O'Connell argued the cause for appellant
(Bochetto & Lentz, PC, attorneys; John A. O'Connell
and George Bochetto (Bochetto & Lentz, PC) of the
Pennsylvania Bar, admitted pro hac vice, of counsel and
on the briefs).

Samantha L. Haggerty argued the cause for respondent
(Duane Morris, LLP, attorneys; Christopher L. Soriano
and Samantha L. Haggerty, of counsel and on the brief).

PER CURIAM

Third-party defendant Gary Buck appeals a Law Division order denying his motion to compel arbitration of the claims asserted against him by third-party plaintiff RA Pain Services, PA (RA Pain). For the following reasons, we affirm in part and reverse and remand in part.

I.

We incorporate by reference the underlying facts and procedural history set forth in our earlier opinion in a related appeal involving somewhat different parties, Tox Design Group, LLC v. RA Pain Services, PA, No. A-4092-18 (App. Div. Dec. 26, 2019). Because the limited issues raised in this appeal do not

involve the merits of RA Pain's allegations against Buck, we briefly recount the pertinent facts, allegations, and procedural history.

RA Pain is a New Jersey professional association organized for the purpose of providing pain management medical services to patients in New Jersey and Pennsylvania. It collects and tests urine specimens.

During all relevant times, Buck was an employee and managing shareholder of RA Pain. In February 2010, RA Pain and Buck entered into an Employment Agreement. In September 2014, RA Pain and its shareholders entered into a separate Shareholders Agreement with Buck. The non-identical arbitration clauses in both contracts form the central dispute in this appeal.

The Employment Agreement contains the following arbitration clause:

> Any controversies or disagreements arising out of, or relating to this Agreement or the breach thereof, including without limitation any assertions of discrimination or harassment, shall be settled by arbitration in accordance with the rules then existing of the American Arbitration Association [(AAA)] in Camden County, New Jersey, and judgment upon the award rendered may be entered in any New Jersey court having jurisdiction thereof. Except upon the mutual agreement of Employer and Employee, this Paragraph shall NOT apply to Paragraphs 18, the Restrictions, and 22. Any costs and fees of arbitration shall be equally shared by the arbitrating parties. However, each party shall be responsible for his or her own attorney's cost and fees.

A-0230-19T1

[(Emphasis added).]

The Shareholder Agreement, meanwhile, provides:

> Except as otherwise provided herein this Agreement, <u>any controversy, claim or dispute arising out of or relating to this Agreement</u> between RA [Pain] or its successors and assigns, and the Shareholder or his or her administrators, beneficiaries, heirs, executors, and representatives, including without limitation racial discrimination, sexual harassment, and any other employment-related or shareholder-related discrimination or harassment, <u>shall be determined by arbitration</u> under the administration of and in accordance with the applicable rules of the [AAA], <u>and a judgment upon the award may be entered in any court having jurisdiction thereof</u>. This Section 20 shall not be applicable to Section 14, Prohibited Competition and Solicitation. Covenant Not to Compete.

[(Emphasis added).]

Buck, with RA Pain's authority and on its behalf, entered into contracts with several companies to provide laboratory management services for RA Pain's in-house drug screening laboratory, including AtMedicalCo, LLC (AtMedical).[1] RA Pain alleges that Buck, in concert with these third-party management companies and without its knowledge, perpetrated a fraudulent scheme to receive payments for medically unnecessary testing from patients, insurers, employers, and government healthcare programs.

---

[1] Improperly pleaded as @Medical, LLC.

In November 2016, RA Pain entered into a Lab Management Services Agreement (LMSA) with AtMedical to provide management and operational services for its laboratory. Tox Design Group, slip op. at 2. The LMSA contains the following Arbitration Clause:

> Resolution of Disputes. In the event that a dispute arises between two or more Parties under this Agreement or regarding the subject matter of this Agreement, the Parties will first negotiate in good faith for up to thirty (30) days to try and resolve the dispute. If the dispute cannot be settled through negotiation within thirty (30) days, such dispute shall be settled by final and binding arbitration to be conducted in Philadelphia, Pennsylvania by one arbitrator with at least ten (10) years of experience in health care matters, such arbitration to be conducted in accordance with the commercial arbitration rules of the American Arbitration Association ("AAA").
>
> [Id. at 3 (emphasis added).]

We concluded that "[t]his broad, easily understood language" gave "reasonable notice of the waiver of the right to judicial adjudication of contractual disputes," and "clearly and unambiguously" provided that disputes between RA Pain and AtMedical arising from the LMSA were to be submitted to final and binding arbitration rather than litigated in the courts. Id. at 13 (internal quotation marks and citations omitted). We held that "the enforceability of the Arbitration

A-0230-19T1

Clause, including any alleged lack of shareholder assent, is to be determined by the arbitrator." Id. at 15.

RA Pain filed a third-party complaint against Buck and the various companies involved in the alleged fraudulent scheme. It averred Buck committed: civil conspiracy (count one); breach of the duty of loyalty (count two); breach of the duty of care (count three); breach of the Shareholder Agreement (count seventeen); breach of the covenant of good faith and fair dealing as to the Shareholder Agreement (count eighteen); breach of the Employment Agreement (count nineteen); and breach of the covenant of good faith and fair dealing as to the Employment Agreement (count twenty).

Buck moved to stay the case based on an ongoing federal criminal investigation into his alleged fraudulent conduct. The trial court denied Buck's motion in January 2019; we denied his motion for leave to appeal in March 2019.

On June 3, 2019, Buck moved to dismiss the third-party complaint or compel arbitration. RA Pain argued that Buck waived his right to arbitration by waiting some nine months after the litigation commenced to assert his right to compel arbitration. RA Pain contended Buck had "plentiful" opportunities to raise arbitration as a defense, noting the parties had participated in numerous case management conferences and engaged in motion practice going back to the

previous July. This included Buck's motion to stay the case to protect his Fifth Amendment rights. RA Pain also contended that Buck should have joined in AtMedical's motion to compel arbitration.

The motion judge concluded that Buck had not waived his right to arbitration. Instead, the judge found that the multiple contractual agreements between RA Pain, Buck, and the other third-party defendants who performed laboratory management services—which provided for conflict resolution in different venues through arbitration, jury trials, and bench trials—rendered the arbitration provisions in the Shareholder and Employment Agreements unclear and ambiguous. The judge explained there were six separate provisions with three different governing law sections and four different methods of resolving disputes. He concluded: "There's no way anybody can make a fair determination based on that, that there's been an understanding, let alone a waiver of rights to compel arbitration." The judge noted he had "already ruled this way" when he denied AtMedical's prior motion to compel arbitration and wanted to be consistent with that prior ruling. This appeal followed.

Buck argues the plain language of the Shareholder and Employment Agreements dictate that all the disputes between the parties be decided in arbitration. He contends the motion judge erred in finding the terms of the

agreements are ambiguous given the language of other contracts. Buck emphasizes that he and RA Pain agreed to arbitrate in one place—Camden County—and no forum selection clause ambiguity exists, unlike in AtMedical's arbitration dispute. Buck further argues that our decision in Tox Design Group essentially overrules the denial of his motion to compel arbitration since the judge based his ruling on his prior decision denying AtMedical's motion to compel arbitration.

Buck points out that: the parties stipulated that responses to pleadings could be filed until June 3, 2019; he moved to compel arbitration when his first responsive pleading was filed; his assent to pre-trial orders was limited to scheduling issues; and no discovery had been conducted by either party.

In this appeal, the central issues are whether: (1) the trial court erred by failing to order arbitration; (2) whether Buck waived his right to arbitrate by delaying his assertion of that right; and (3) whether Buck waived his right to arbitrate by moving to stay the proceedings in order to invoke his Fifth Amendment right against self-incrimination in connection with the ongoing federal criminal investigation. In the alternative, RA Pain argues that if we

determine that Buck did not waive his right to arbitration, we should remand for limited discovery as to whether there was mutual assent to arbitrate disputes.[2]

## II.

## A.

We first address whether the motion judge erred by ruling the arbitration clauses between RA Pain and Buck are unenforceable. The motion judge determined the clauses were unenforceable because they were unclear and ambiguous, and because they differed from RA Pain's agreements with other third-party defendants such as AtMedical as to the forum and venue designated for dispute resolution. We disagree.

The arbitration clauses in the Employment Agreement and the Shareholder Agreement are clear and unambiguous. Both dictate that any controversies or disagreements arising from the agreements shall be resolved by arbitration. This broad, easily understood language gives "reasonable notice" to the waiver of the "right to judicial adjudication" of contractual disputes, Curtis

---

[2] Tox Design Group did not cross-appeal or submit a brief. Accordingly, we do not acknowledge or consider any arguments it attempted to raise and deem them waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived." (Citations omitted)); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2020) (same).

v. Cellco Partnership, 413 N.J. Super. 26, 38 (App. Div. 2010) (citing Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577, 586 (App. Div. 2004)), and manifests an intention "that disposition of disputes will occur outside the courts," ibid.

RA Pain argues Buck procured the arbitration clauses in the Shareholder and Employment Agreements by fraud because if it had known of Buck's fraudulent intentions, its shareholders would have never agreed to arbitrate its claims against him. RA Pain asserts that Buck's fraudulent conduct and breach of fiduciary duties do not arise out of and or relate to the agreements.

In our prior opinion, we rejected RA Pain's similar argument that its claims against AtMedical for civil conspiracy, aiding and abetting breach of fiduciary duty, negligence, and fraud, were outside the scope of the arbitration clause agreed to between RA Pain and AtMedical. Tox Design Group, slip op. at 12-13 (citing Curtis, 413 N.J. Super. at 37-39). We reach the same conclusion here. As in Tox Design Group, "there would be no relationship between RA Pain and [Buck] absent the [two] Agreement[s]." Id. at 14.

A claim of fraudulent inducement generally must be presented in the first instance to the arbitrator and not to the court. See Van Syoc v. Walter, 259 N.J. Super. 337, 338-39 (App. Div. 1992) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967)). "Unless an arbitration provision itself

is a product of fraud, an election to arbitrate should be enforced." Lederman v. Prudential Life Ins. Co. of Am., 385 N.J. Super. 324, 338 (App. Div. 2006) (citing Van Syoc, 259 N.J. Super. at 339) (other citations omitted). Here, the alleged fraudulent activity occurred after the parties agreed to arbitrate their future disputes. The parties operated under the terms of Employment Agreement for more than five years and the Shareholders Agreement for more than one year before any alleged fraudulent conduct occurred. There is no evidence in the record that the agreements to arbitrate were a product of fraud.

RA Pain requests that we remand to the trial court to allow the parties to conduct limited discovery pertaining to Buck's invocation of his Fifth Amendment rights and the validity of the arbitration clauses. We discern no need for such discovery because RA Pain has not provided any evidential basis to support this contention. As we have indicated, even if, hypothetically, Buck perpetrated a fraud and thereby profited from Central Tox and AtMedical's management of RA Pain's laboratory, that conduct does not undermine the validity of the arbitration agreements.

## B.

We next address RA Pain's argument that Buck waived his right to arbitration. "[P]arties may waive their right to arbitrate in certain

circumstances," although such waiver is "never presumed." <u>Cole v. Jersey City Med. Ctr.</u>, 215 N.J. 265, 276 (2013). "An agreement to arbitrate a dispute 'can only be overcome by clear and convincing evidence that the party asserting [arbitration] chose to [litigate] in a different forum.'" <u>Ibid.</u> (quoting <u>Spaeth v. Srinivasan</u>, 403 N.J. Super. 508, 514 (App. Div. 2008)).

When analyzing whether a party has waived its right to arbitration, a court "must focus on the totality of the circumstances." <u>Id.</u> at 280. Courts should consider, among other factors, the following:

> (1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of trial; and (7) the resulting prejudice suffered by the other party, if any.
>
> [<u>Id.</u> at 280-81.]

This analysis is fact-sensitive and is reviewed de novo on appeal. <u>Id.</u> at 275, 280. The judge did not analyze the <u>Cole</u> factors. Because our review is de novo, the pertinent facts are undisputed, and the issue has been fully briefed and orally argued, we perceive no need to remand this issue to the trial court. <u>See, e.g.,</u>

12

Marion v. Borough of Manasquan, 231 N.J. Super. 320, 330 (App. Div. 1989) (exercising original jurisdiction where resolution of the issue "is necessary for a complete determination . . . and the facts necessary to resolve it are present in the record") (citing R. 2:10-5)). Further, the "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted).

In Cole, the Court held that an employer waived its right to arbitrate a former employee's wrongful termination claims by engaging in various litigation procedures for twenty-one months and then invoking its right to arbitrate on the eve of trial. Id. at 268-69. This included filing an answer with thirty-five affirmative defenses, engaging in extensive discovery, and filing a motion for summary judgment. Id. at 280-83.

In response, Buck cites Hudik-Ross, Inc. v. 1530 Palisade Ave. Corp., 131 N.J. Super. 159 (App. Div. 1974), where we declined to find the defendant waived his right to arbitrate by first demanding arbitration as an affirmative defense in its answer filed four months after the plaintiff filed its complaint. Id. at 167. Similarly, in Spaeth, we declined to find a waiver of arbitration rights where the defendant asserted her right to arbitrate six months after the plaintiff

filed his complaint, but "well before any meaningful exchange of discovery—much less the discovery end date—and well in advance of fixing a trial date." 403 N.J. Super. at 516.

Here, RA Pain filed its initial third-party complaint on August 31, 2018, and its amended third-party complaint on February 25, 2019. Buck moved to dismiss or compel arbitration in his first responsive pleading on June 3, 2019, some three months and six days later.

Buck filed an unsuccessful, non-dispositive motion to stay the proceedings to protect his Fifth Amendment rights due to the federal criminal investigation. Cf. Cole, 215 N.J. at 282 ("The filing of a dispositive motion is a significant factor demonstrating a submission to the authority of a court to resolve the dispute."). We denied leave to appeal on March 8, 2019.

Moreover, the parties had not yet commenced discovery, much less engaged in extensive discovery. The discovery end date was February 14, 2020; no trial date had been set.

RA Pain also argues it has been prejudiced by Buck's delay, because it is unable to undertake discovery to ascertain what matters as to which he will invoke his Fifth Amendment protections in lieu of testifying about those matters. It asserts that because Buck is essential to both its claims and defenses, its

inability to conduct discovery has led to an early summary judgment motion by the Tox parties, as well as an impending discovery deadline.

Contrary to RA Pain's position, Buck moved to compel arbitration long before the discovery end date. Unlike in Cole, 215 N.J. at 282, Buck did not seek to change forums on the eve of trial. Buck's contractual right to arbitration is not defeated by the status of the litigation as to other parties while this appellate process unfolded. Moreover, RA Pain has not demonstrated that it would be significantly prejudiced by permitting Buck to pursue resolution through arbitration.

Considering the totality of the circumstances, we conclude that Buck did not waive his right to arbitration.

C.

Buck appeals from the denial of his motion to stay the proceedings in order to protect his privilege against self-incrimination in the ongoing federal criminal investigation. The parties advise us that the United States Attorney has issued a letter identifying a target of the investigation. Counsel for RA Pain and Buck further advised during oral argument before this court that they have no objection to staying the proceedings given the present updated status of the

15

federal investigation. We do not know the positions of other parties to this lawsuit, however.

We remand this issue for the trial court to reevaluate whether the arbitration should be stayed because of the ongoing federal criminal investigation. We modify the stay of litigation imposed in Tox Design Group, slip op. at 15, to permit arbitration to proceed, unless stayed by the trial court because of the pendency of the federal investigation.

We affirm in part and reverse and remand in part for further proceedings consistent with this opinion. To implement our decision, we suggest the trial court conduct a case management conference within thirty days. At that conference, the trial court can determine in the first instance if the various arbitration provisions can be reasonably harmonized or agreed-upon and whether a unified arbitration in one forum (whether it be in New Jersey or Pennsylvania) is feasible. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION