**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3995-22

PETER and NITA ROSE,
on behalf of themselves and
all others similarly situated,

     Plaintiffs-Appellants,

v.

SHORE CUSTOM HOMES
CORP.,

     Defendant,

and

VINCENT SIMONELLI,
and DREAM HOMES &
DEVELOPMENT CORPORATION,

     Defendants-Respondents.

_____

Submitted August 27, 2024 – Decided September 3, 2024

Before Judges DeAlmeida and Vinci.

On appeal from the Superior Court of New Jersey,
Law Division, Ocean County, Docket No. L-1428-22.

Lueddeke Law Firm, attorneys for appellant (Ronald L. Lueddeke, on the brief).

Vito C. DeMaio, attorney for respondents.

PER CURIAM

Plaintiffs Peter and Nita Rose appeal from the Law Division's June 19, 2023 order compelling arbitration of their individual contractual and statutory claims against defendants Vincent Simonelli and Dream Homes and Development Corporation (Dream Homes), as well as the July 21, 2023, and August 25, 2023 orders denying plaintiffs' motions for reconsideration.[1] We affirm.

Plaintiffs entered into an "Addition/Renovation C[ontract]" (Contract) with Shore Custom Homes Corp. (Shore Custom) to raise, renovate, and build an addition on their property located in Bayville for a total cost of $314,800.[2]

---

[1] Plaintiffs also asserted putative class action claims against defendants that were bifurcated by the trial court and excluded from the June 19, 2023 order compelling arbitration. The parties did not appeal from that aspect of the June 19 order. Accordingly, the arbitrability of plaintiffs' class action claims is not before us.

[2] Shore Custom is a wholly owned subsidiary of Dream Homes. Shore Custom was dismissed from the case after it filed for Chapter 11 bankruptcy protection.

A-3995-22

The Contract contains a provision entitled "Contact and Warranty Disputes" that provides:

> In the event any dispute arises between the parties and the dispute is not resolved within thirty (30) business days, [plaintiffs] agree[] to submit resolution of the dispute(s) to [b]inding [a]rbitration as administered by the American Arbitration [Association], and to be bound by the Rules and Regulations as promulgated by the American Arbitration [Association]. [Plaintiffs] specifically agree[] that any disputes shall be determined by arbitration and shall not be otherwise litigated in a court of law. [Plaintiffs] agree[] to submit all unresolved disputes covered under the Homeowner's Warranty to the Homeowner's Warranty agency and agree[] to permit all necessary work if warranted, to be performed by the Homeowner[']s Warranty agency before initiating any further action against [Shore Homes]. Cost of arbitration will be paid for by the party who institutes arbitration. [Plaintiffs] specifically agree[] that no claims will be made under the Consumer Fraud Act unless there is a specific material breach by [Shore Homes] involving a default under this contract or failure to complete the scope of work.

The Contract contains a provision entitled "Legal Representation" that provides, in relevant part: "[Plaintiffs] acknowledge[] that [plaintiffs have] the right at [plaintiffs'] cost and expense, to hire any lawyer to represent [plaintiffs'] interest[s] in this transaction." The Contract also contains a provision entitled "Attorney Review" that provides, in relevant part: "From the date of signing of this Agreement, the [plaintiffs] may cancel this contract

3

by midnight of the third day after receiving a copy of this contract, by registered or certified mail."

After disputes arose regarding Shore Custom's work under the Contract, plaintiffs filed a complaint in the Law Division against Shore Custom and Simonelli alleging causes of action based on: (1) the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -227 (CFA); (2) fraud; (3) breach of contract; (4) breach of warranty; (5) breach of the implied covenant of good faith and fair dealing; (6) breach of the implied covenant that work will be performed in a workmanlike manner; (7) negligence; and (8) unjust enrichment.

Shore Custom and Simonelli moved to compel arbitration. Plaintiffs opposed that motion and cross-moved to file a first amended complaint to add Dream Homes as a defendant and assert putative class action claims alleging violations of the CFA and the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to -14-18 (TCCWNA).

On May 26, 2023, after hearing oral argument, the trial court granted both motions in an oral opinion. The court determined, "there is an arbitration clause that binds the parties to arbitration. The [c]ourt does[ not] find that there[ is] anything unusual or unclear, anything that would be unconscionable about that clause." The court also found "these disputes were between two

4

competent knowing parties. That there was the opportunity . . . to have the [C]ontract reviewed by an attorney" and "[a]ttorney review says you have three days to cancel the contract if you do[ not] want to proceed."

Based on defendants' representation that they would initiate the arbitration proceeding, the court "recognize[d] the obligation to pay for the arbitration, which will be paid for and file[d] by the defendant[s] . . . within [thirty] days . . . ." Finally, with the consent of defendants, the court bifurcated plaintiffs' class action claims from the claims the court determined were subject to the arbitration provision. On June 19, 2023, the court entered an order consistent with its May 26 opinion.

Plaintiffs moved for reconsideration arguing their CFA claims are not subject to arbitration because the Contract does not expressly provide for arbitration of statutory claims. On July 21, 2023, the court heard oral argument and denied plaintiffs' motion in an oral opinion.

Plaintiffs subsequently moved to extend discovery, vacate the court's June 19 order compelling arbitration, or, alternatively, for a stay pending appeal. Plaintiffs did not request oral argument. On August 25, 2023, the court entered an order extending discovery, denying plaintiffs' motion to vacate the June 19 order, and staying the arbitration for thirty days.

5

A-3995-22

As permitted by Rule 2:2-3(b)(8), plaintiffs appeal from the June 19, July 21, and August 25, 2023 orders to the extent they compelled arbitration of plaintiffs' claims. On appeal, plaintiffs contend: (1) the arbitration provision is defective because it does not clearly and unambiguously convey the rights being waived; (2) the arbitration provision is defective because it is unconscionable, goes against public policy, and contains multiple violations of the TCCWNA; and (3) there is no delegation clause that would arguably give the arbitrator authority to resolve issues of arbitrability.

We affirm substantially for the reasons set forth in the trial court's May 26, 2023 oral opinion. We add the following comments.

The enforceability of an arbitration agreement is a question of law, which we review de novo. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020). "Similarly, the issue of whether parties have agreed to arbitrate is a question of law that is reviewed de novo." Jaworski v. Ernst & Young U.S. LLP, 441 N.J. Super. 464, 472 (App. Div. 2015). Thus, we exercise de novo review of a trial court's order compelling arbitration. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019). "[I]n reviewing such orders, we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). That

6

preference, "however, is not without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).

Arbitration agreements are subject to customary contract law principles. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014). A valid and enforceable agreement requires: (1) consideration; (2) a meeting of the minds based on a common understanding of the contract terms; and (3) unambiguous assent. Id. at 442-45. Consequently, to be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified. Id. at 442-43; see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319-20 (2019). "[C]ontract terms should be given their plain and ordinary meaning." Kernahan, 236 N.J. at 321.

Plaintiffs' contention that the arbitration provision is defective because it fails to convey a waiver of the right to bring suit in court is not persuasive. "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Atalese, 219 N.J. at 444. If, "at least in some general and sufficiently broad way," the language of the clause conveys that arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced. Id. at 447; see also Morgan v. Sanford Brown Inst., 225 N.J.

7

289, 309 (2016) ("No magical language is required to accomplish a waiver of rights in an arbitration agreement.").

Here, the Contract provides, "[i]n the event any dispute arises between the parties . . . [plaintiffs] agree[] to submit resolution of the dispute(s) to [b]inding [a]rbitration as administered by the American Arbitration [Association]" and "be bound by the Rules and Regulations as promulgated by the American Arbitration [Association]."  The Contract further provides, "[plaintiffs] specifically agree[] that any disputes shall be determined by arbitration and shall not be otherwise litigated in a court of law."

We agree with the trial court that this arbitration provision meets the standards of Atalese and its progeny.  The provision clearly and unambiguously evidences a waiver of plaintiffs' right to pursue any claims against defendants in a judicial forum and obligates plaintiffs to resolve their claims through arbitration.

Plaintiffs' contention that the arbitration provision does not encompass their CFA claims is likewise unconvincing.  "[I]t is well-established that CFA claims may be the subject of arbitration and need not be exclusively presented in a judicial forum."  Curtis v. Cellco P'ship, 413 N.J. Super. 26, 37 (App. Div. 2010).  "Arbitration of statutory claims is enforceable when the contract

provisions . . . contain language reflecting a general understanding of the type of claims included in the waiver[.]" Id. at 35-36. An arbitration clause need not "identify the specific constitutional or statutory right . . . that is waived by agreeing to arbitration." Atalese, 219 N.J. at 447.

The arbitration provision in Curtis provided that the parties agreed to submit "any controversy or claim arising out of or related to [the parties] agreement," and defined the subject claims to include any "statutory right for reimbursement of attorney's fees." Curtis, 413 N.J. Super. at 37. We concluded that contractual language was sufficient to encompass CFA claims because it "reflect[ed] a willingness to arbitrate all claims, contractual, as well as statutory . . . ." Id. at 39.

Here, the arbitration provision extends to "any disputes" between the parties. Moreover, the provision specifically references the CFA, providing, "no claims will be made under the [CFA] unless there is a specific material breach . . . involving a default under this contract or failure to complete the scope of work." Given the broad language of the arbitration agreement and the specific reference to claims asserted under the CFA, we are satisfied the court correctly determined the arbitration agreement reflects a willingness to arbitrate all claims, including CFA claims.

9

Plaintiffs' argument that the arbitration provision is unconscionable lacks merit. Plaintiffs' contention that the provision violates the CFA and the TCCWNA because it improperly shifts the "[c]ost of arbitration" to "the party who institutes arbitration" is moot. Defendants agreed they will institute arbitration and, based on that representation, the court ordered defendants to do so and pay the costs as required by the Contract.

Plaintiffs' claim that they are precluded from pursuing CFA claims based on the Home Improvement Practices regulations, N.J.A.C. 13:45A-16.2 (HIP regulations) or the Contractor's Registration Act, N.J.S.A. 56:8-136 to -152 (CRA) is unavailing. Nothing in the Contract prohibits such claims. The Contract provides "no claims will be made under the [CFA] unless there is a specific material breach . . . involving a default under this contract or failure to complete the scope of work." Plaintiffs satisfied that condition because they allege material breaches involving a default under the Contract and failure to complete the scope of work. Therefore, based on the plain terms of the Contract, plaintiffs are free to assert all manner of CFA claims, including claims based on the HIP regulations or the CRA.[3]

---

[3] Defendants concede plaintiffs satisfied the condition set forth in the Contract and may assert CFA claims without limitation.

Plaintiffs' reliance on our recent decision in Achey v. Cellco Partnership, 475 N.J. Super. 446 (App. Div.), certif. granted, 255 N.J. 286 (2023), is misplaced. Achey involved a customer agreement that was a "contract of adhesion . . . 'presented on a take-it-or-leave-it basis . . . without opportunity for the "adhering" party to negotiate.'" Id. at 455 (second omission in original). Under those circumstances, we concluded the "'cumulative effect' of . . . various unconscionable terms render[ed] the arbitration agreement 'unenforceable for lack of mutual assent.'" Id. at 459.

The Contract in this case is not a contract of adhesion. Plaintiffs entered into an agreement with Shore Custom for substantial renovations to their property. The Contract was not presented to them on a "take-it-or-leave-it basis." Plaintiffs selected Shore Custom to do the work, had the express right under the Contract to retain counsel to review and negotiate the terms of the Contract, and had the right to cancel the Contract within three days. Even if plaintiffs could demonstrate that their statutory rights were impaired, which they cannot, there would be no basis to find the arbitration agreement unenforceable under the circumstances of this case.

Finally, plaintiffs' claim that the arbitration agreement is not enforceable because it does not contain a "delegation" clause is incorrect. "Parties to an

11

arbitration agreement can agree to delegate to an arbitrator the issue of whether they agreed to arbitrate a particular dispute." Morgan, 225 N.J. at 303. Absent a delegation clause, "the decision whether the parties agreed to arbitration . . . is for a court to resolve." Id. at 295-96. Here, the Contract does not contain a delegation clause and, as a result, the court decided whether the parties agreed to resolve their disputes through arbitration.

To the extent we have not addressed any of plaintiffs' remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION