**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0078-24

ESTATE OF JAMES G. BENDER,
KRISTA D. BENDER, individually
and as executor for the ESTATE OF
JAMES G. BENDER, deceased.

     Plaintiffs-Appellants,

v.

BQ BASEMENTS AND CONCRETE,
BQ BASEMENT SYSTEMS, INC.,
BQ BASEMENT SYSTEMS, INC.,
d/b/a BQ BASEMENTS AND
CONCRETE, JES CONSTRUCTION,
LLC, JES CONSTRUCTION, LLC,
d/b/a BQ BASEMENTS AND
CONCRETE, GROUNDWORKS
OPERATIONS, LLC,
GROUNDWORKS OPERATIONS,
LLC, d/b/a GROUNDWORKS, and
GROUNDWORKS OPERATIONS,
LLC, d/b/a BQ BASEMENTS
AND CONCRETE,

     Defendants-Respondents.

_____

Submitted May 12, 2025 – Decided July 29, 2025

Before Judges Sabatino and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0604-24.

Michael W. Oto, attorney for appellant.

Riker Danzig LLP, attorneys for respondents (Michael R. O'Donnell and Ronald Z. Ahrens, of counsel and on the brief; Kori L. Pruett, on the brief).

PER CURIAM

Plaintiffs the Estate of James G. Bender and Krista Bender appeal from an August 2, 2024 Law Division order granting defendant's motion to compel arbitration and dismissing their ten-count complaint with prejudice. Because the Alternative Dispute Resolution ("ADR") clause at issue includes a one-sided reservation of rights provision, we affirm in part, reverse in part to vacate that provision, and remand for further proceedings in arbitration.

I.

In early 2023, James Bender ("Bender") hired defendant BQ Basement and Concrete ("BQ") to evaluate whether his basement required repairs for water infiltration. BQ determined that waterproofing was necessary and presented Bender with a service agreement. Before signing the agreement, Bender informed BQ that he had a pulmonary condition necessitating adequate control of the debris and particulates resulting from the construction. BQ assured

2

Bender it would maintain a dust-free environment by performing the work in a controlled and guarded manner so as not to present risk to Bender's health. With this assurance, Bender entered into a $12,000 written contract with BQ for basement waterproofing. The contract included three signature blocks and required initials in five additional locations. It also included a dispute resolution clause printed in approximately 6-point font, which read in pertinent part:

> **5. Dispute Resolution**. Dispute Resolution . . . . Except for instances of failure to pay the full amount of the Contract, <u>any claim, dispute, or other matter in controversy arising out of or related to this Contract or breach thereof</u> shall be settled by arbitration administered by the American Arbitration Association ("AAA") . . . .
>
> [(Emphasis added).]

The clause also contained a reservation of rights provision and waiver provision:

> If payment in full is not made when due, <u>Contractor is entitled to proceed with litigation</u> and may recover all expenses of collection, including attorneys' fees, court costs, court reporter fees, and expert witness fees, in such amount as the court may adjudge reasonable . . . . EACH PARTY TO THIS CONTRACT FOR ITSELF, ITS SUCCESSORS AND ASSIGNS, <u>WAIVES ALL RIGHTS TO TRIAL BY JURY</u> FOR ANY CLAIM, DISPUTE, OR OTHER MATTER IN CONTROVERSY ARISING OUT OF OR RELATED TO THIS CONTRACT.
>
> [(Emphases added).]

3

A-0078-24

Following BQ's completion of the services, Bender's health deteriorated, and he passed away.

In February 2024, plaintiffs filed a complaint alleging that BQ's faulty repairs caused property damage, which led to financial hardship and exposed Bender to unnecessary and unreasonable health risks that they contend ultimately resulted in his death. From this premise, plaintiffs alleged ten causes of action against defendants: breach of contract, negligence, gross negligence, fraud, consumer fraud, fraudulent misrepresentation, fraudulent inducement, negligent misrepresentation, negligent infliction of emotional distress, and wrongful death. In June 2024, defendants filed a motion to compel arbitration and dismiss the complaint with prejudice, citing the ADR clause within the contract.

At a subsequent hearing, defendants argued the ADR clause to be valid and enforceable because it contains clear language indicating that "all claims of a certain type are to be arbitrated" and a provision for waiver of right to a jury trial. Defendants also maintained the clause did not violate the Plain Language Act (PLA), N.J.S.A. 56:12-1 to -13, because there was no evidence that the language of the ADR clause was confusing. Further, the 6.86 font size, which

A-0078-24

was uniformly used throughout the contract, did not render the ADR clause unenforceable.

Plaintiffs challenged the procedural and substantive fairness of the ADR clause. They maintained that the contract contained legal provisions that were literally buried in the third page of a four-page boilerplate form contract in confusingly titled paragraphs. Second, the arbitration clause was unconscionable and void as against public policy in that it failed to meet the pertinent statutory provisions and required Bender to arbitrate all his claims while carving out an exception for defendants to pursue court action for unpaid services. Third, a provision that each party "waives all rights to trial by jury" was insufficient, in that it did not reasonably inform Bender that he was waiving his right "to pursue any action in any other forum such as a court action or administrative proceeding." Finally, except for the breach of contract claim, the remaining claims neither arise from nor relate to the contract, and therefore would not be subject to mandatory arbitration.

In its August 2, 2024 decision, delivered orally and reduced to writing the same day, the court granted defendant's motion to compel arbitration and dismissed the matter with prejudice. The court reasoned that the ADR clause complied with Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 440

5

(2014) because it contained a valid waiver provision and specified the claims subject to arbitration. The court deemed the font size inconsequential because "no case . . . says the font has to be bigger" and the title of the clause was in bold font. And the court concluded that the reservation of rights provision was not "a problem" because "it's for a simple collection matter, if it's not paid" and does not address "the work performed or any rights of the parties or allegations as to the contract."

On September 17, 2024, plaintiffs filed an amended notice of appeal. On February 24, 2025, defendants submitted a Rule 2:6-11(d) letter advising of this court's recent decision in Lahoud v. Anthony & Sylvan Corp., 481 N.J. Super. 29 (App. Div. 2025) and distinguishing it from the case at hand. On April 2, 2025, plaintiffs submitted a response letter arguing that the Lahoud case provides additional support for their arguments. On April 10, 2025, we granted plaintiff's motion to file a letter in response as within time.

On appeal, plaintiffs argue that the court erred in failing to properly interpret and apply the Atalese standard. Plaintiffs also contend the arbitration clause does not bar the filing of claims that are beyond the four corners of the complaint.

6

## II.

We review de novo the motion court's dismissal order.  Kennedy v. Weichert Co., 257 N.J. 290, 302 (2024).  "The existence of a valid and enforceable arbitration agreement poses a question of law, and as such, our standard of review of an order denying a motion to compel arbitration is de novo."  Barr v. Bishop Rosen & Co., 442 N.J. Super. 599, 605 (App. Div. 2015) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013); Frumer v. Nat'l Home Ins. Co., 420 N.J. Super. 7, 13 (App. Div. 2011)).  "In reviewing such orders, we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level."  Hirsch, 215 N.J. at 174.

"Under both the Federal Arbitration Act (FAA) and New Jersey law, arbitration is fundamentally a matter of contract."  Lahoud, 481 N.J. Super. at 41.  "Consequently, to be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified."  Ibid.  Further, the agreement must be conscionable and may not be secured through fraud, duress, coercion, or mistake.  Pace v. Hamilton Cove, 258 N.J. 82, 102 (2024).  "When a party asserts unconscionability as a defense, we conduct a fact-sensitive analysis and assess both procedural and substantive unconscionability."  Ibid.

A-0078-24

Plaintiffs assert the ADR clause is unenforceable because: (1) it is placed "deep into the contract, under an unrelated heading, in a wordy, single-spaced, small font paragraph" and is therefore violative of the PLA; and (2) it contains a provision for waiver of "trial by jury" that does not amount to a waiver of the "statutory right to seek relief in a court of law" as spelled out in Atalese. Further, plaintiffs argue that the contract is unconscionable because there was an imbalance of bargaining power between Bender—an eighty-year-old man with health issues—and defendants, who are experienced in commercial business. This, according to the plaintiffs, renders the service agreement a contract of adhesion. Additionally, they observe that the arbitration clause contains a one-way reservation of rights provision that benefits only the defendants. Alternatively, plaintiffs argue that, except for the breach of contract claim, all of their other claims in the complaint fall outside the scope of the agreement and are not covered by the arbitration clause, even if that clause is found to be valid. We address each argument in turn.

The Plain Language Act

Pursuant to the PLA, "[a] consumer contract entered into on or after the effective date of this amendatory and supplementary act shall be written in a simple, clear, understandable and easily readable way." N.J.S.A. 56:12-2. The

A-0078-24

PLA provides "guidelines" and "examples" that a court "may consider in determining whether a consumer contract as a whole complies with this act." N.J.S.A. 56:12-10(a) to (b). A court may consider whether a contract uses lengthy or confusing sentences, sections placed in illogical order, or complex words. N.J.S.A. 56:12-10(a). A court may also consider whether "conditions or exceptions to the main promise of the agreement" are "in at least 10 point type." N.J.S.A. 56:12-10(b)(3). Thus, the PLA does not require any specific language, font size, or format, but rather lists factors that a court "may" consider when determining whether a consumer contract is compliant with the Act. N.J.S.A. 56:12-10(a) to (b).

As applied, the PLA may render "[a]n arbitration provision that purports to utilize mediation procedures . . . unenforceable because the parties cannot be said to have reached a meeting of the minds on whether the proceeding will result in a binding award." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 325 (2019). That is because "a lay reader [would perceive] that there are two procedures being proposed through this confusing alternative dispute resolution provision" which is labeled "mediation" but contained language requiring the parties to arbitrate their claims. Ibid. On the other hand, an arbitration clause that contains language specifically referring to the claims

A-0078-24

subject to arbitration and alerts the consumer "in uppercase type" of the waiver provision is sufficiently clear and noticeable. Gras v. Assocs. First Cap. Corp., 346 N.J. Super. 42 (App. Div. 2001), certif. denied, 171 N.J. 445 (2002).

Here, the ADR clause concerned is labeled "Dispute Resolution" in bold font, unmistakably signifying its import. Unlike the misleading ADR clause in Kernahan, the subject clause does not reference nor discuss other dispute resolution methods. 236 N.J. at 325-26. Instead, the title of the section is consistent with the purposes of arbitration. In addition, the clause is listed in paragraph five of the contract under a section titled "Terms and Conditions." Defendants acknowledge that the font size of the provision in question is approximately 6.86 points. However, the PLA does not mandate that agreements must use at least 10-point font. Instead, font size serves as a guideline for courts to consider. See N.J.S.A. 56:12-10(b)(3).

The terms of the ADR clause are clear, specifying that "any claim, dispute, or other matter in controversy arising out of or related to this Contract or breach thereof" is subject to arbitration settled by the American Arbitration Association in accordance with its relevant industry rules. In compliance with Gras, 346 N.J. Super. at 42, the clause at issue also contains a waiver provision in

10

uppercase letters, distinguishable from the remainder of the clause and the contract, which reads:

> EACH PARTY TO THIS CONTRACT FOR ITSELF, ITS SUCCESSORS AND ASSIGNS, WAIVES ALL RIGHTS TO TRIAL BY JURY FOR ANY CLAIM, DISPUTE, OR OTHER MATTER IN CONTROVERSY ARISING OUT OF OR RELATED TO THIS CONTRACT.

Thus, considering all relevant factors, the ADR clause concerned was "simple, clear, understandable, and easily readable." N.J.S.A. 56:12-10(a). In summary, although we do not condone use of a 6.86 font size, plaintiffs have not presented any evidence showing that Bender was "substantially confused about any of the rights, obligations or remedies of the contract," or that participating in arbitration "has caused or is likely to cause financial detriment" to plaintiffs in violation of the PLA. N.J.S.A. 56:12-4.1(b) to (c).

Waiver Provision

In Atalese, plaintiff contracted with defendant for debt-adjustment services. 219 N.J. at 435. The contract included an ADR clause requiring the parties to resolve their claims through arbitration, but it did not specifically state they were waiving their right to seek judicial relief. Ibid. The Atalese Court held that "[t]he absence of any language in the arbitration provision that plaintiff was waiving her statutory right to seek relief in a court of law renders the

11

provision unenforceable." Id. at 436 (emphasis in original). In so holding, the Court clarified that "[t]he point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Id. at 444 (alteration in original). However, "[n]o particular form of words is necessary to accomplish a clear and unambiguous waiver of rights" so long as the terms in a consumer contract are written in simple and clear terms. Ibid. (emphasis added) (citing N.J.S.A. 56:12-2). Accordingly, "[o]ur courts have upheld arbitration clauses phrased in various ways when those clauses have explained that arbitration is a waiver of the right to bring suit in a judicial forum." Ibid.

As an example of an acceptable arbitration clause, the Atalese court suggested language stating that "all disputes relating to . . . employment . . . shall be decided by an arbitrator" and included a provision for waiver of "right to a jury trial." Ibid. (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 81-82 (2002)). Therefore, an arbitration clause is enforceable if it clearly identifies the claims subject to arbitration and includes a waiver that is "sufficiently broad." Id. at 445 (quoting Martindale, 173 N.J. at 81-82).

In this case, the trial court correctly found that the ADR clause complied with the requirements set out in Atalese; the clause clearly specified which

12

claims would be arbitrated and included a waiver of the right to a jury trial. To be clear, the Atalese court did not mandate that an arbitration clause explicitly "state that the matter may not be presented or heard in a court of law," as plaintiffs contend. On the contrary, the Court in Atalese clarified that no talismanic or "particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Id., 219 N.J. at 444. Nor did the Court distinguish between a waiver to the "right to a jury trial", a waiver of the right "to maintain other available resolution processes, such as a court action or administrative proceeding", or a provision explaining that parties would settle disputes "only by arbitration" without the benefit of having the claim settled in court by a "judge or jury." Id. at 444-45. Rather, it placed all three variations of valid waiver provisions on an equal footing. Id. at 445. Indeed, "without difficulty and in different ways, the point can be made that by choosing arbitration one gives up the" right to bring suit. Ibid.

In addition, plaintiff's contention that a valid ADR clause must "explain to the consumer that he is waiving his statutory right to seek relief in a Court of Law," is without merit. In its assessment of whether the arbitration clause in Atalese passed muster, the Court noted that the clause "has none of the language our courts have found satisfactory in upholding arbitration provisions," such as

13                                                                                    A-0078-24

an "explanation that plaintiff is waiving her right to seek relief in court for a breach of her statutory rights." 219 N.J. at 446. However, that an ADR clause does not have a statement distinguishing between arbitration and other judicial forums does not automatically render the clause invalid. See ibid. Rather, the inquiry is and has always been whether the clause contains "clear and unambiguous language that the plaintiff is waiving her right to sue or go to court to secure relief." Ibid. So long as "the clause, at least in some general and sufficiently broad way, . . . explain[s] that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute," the court must enforce it. Id. at 447 (emphasis added).

In sum, the subject ADR clause which requires the parties to arbitrate "any claim, dispute, or other matter in controversy arising out of or related to this Contract or breach thereof" and includes a waiver of "all rights to trial by jury for any claim, dispute, or other matter in controversy arising out of or related to this contract" is substantially similar to other clauses consistently upheld by our Supreme Court. See id. 444-45 (quoting Martindale, 173 N.J. at 81-82) (citing examples of ADR clauses "phrased in various ways" that have been upheld by our courts). To that end, the ADR clause in question—excluding the reservation of rights provision, which will be addressed later—is valid and enforceable.

14

Contract of adhesion

A contract of adhesion, or a contract "presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the adhering party to negotiate except perhaps on a few particulars," entails some procedural unconscionability. Rudbart v. N.J. Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992) (citations omitted) (internal quotation marks omitted).

Here, the record regarding contract formation and execution is sparse. Plaintiffs allege the service agreement was an adhesion contract because there "was no negotiation or bargaining possible," and defendants left Bender with no meaningful option but to "sign here" if he wanted the repairs completed. Despite the foregoing contention, plaintiffs in their brief to this court effectively concede that Bender negotiated with defendants before executing the agreement:

> Prior to executing said agreement, Mr. Bender made Defendants aware that he had a pulmonary condition and that under no exception could any amount of dust, debris or particulate be allowed to enter the living areas of the home, due to the severe health risks of same. Defendants assured Mr. Bender that they would perform the work in a controlled and meticulously guarded manner so as not to present any risk to Mr. Bender's health or his most prized possession, his train system.
>
> [(Emphases added).]

15

Defendants dispute plaintiffs' narrative, observing that the while defendants used their "form of contract . . . , it was clearly customized for Bender's specific needs."

Evidently, the second page of the contract spelled out the duties of both parties, which were tailored to accommodate Bender's request for adequate control of the debris resulting from the construction. Specifically, the second page of the contract provided that "[c]ontractor [a]grees to . . . [s]pray/clean/wirebrush all walls prior to install. Wrap entire trainset in plastic/tape to make sure nothing gets dust/debris and leave broom clean when finished." Considering the negotiations prior to the execution of the contract and the incorporation of language tailored to Bender's needs, the service agreement signed here was not presented in a "take-it-or-leave-it" manner and, therefore, did not constitute a contract of adhesion. Rudbart, 127 N.J. at 354; see also Lahoud, 481 N.J. Super. at 45 (holding that a consumer contract for pool installation is not an adhesion contract because it was not presented to plaintiff on a "take-it-or-leave-it" basis and plaintiff selected defendant to install the pool and had the opportunity to negotiate terms and retain counsel).

Even if the service agreement were an adhesion contract, it would not instantaneously render the agreement unconscionable. "[T]hat a contract is a

16

contract of adhesion imbued with some procedural unconscionability marks only 'the beginning, not the end of the inquiry' regarding its enforceability." Pace, 258 N.J. at 103 (quoting Rudbart, 127 N.J. at 354). In addition to its "take-or-leave-it nature, to determine whether a contract of adhesion is enforceable, courts have considered the following factors: (1) the subject matter of the contract; (2) the parties' relative bargaining positions; (3) the degree of economic compulsion motivating the adhering party; and (4) the public interests at stake. Rudbart, 127 N.J. at 356.

In this case, the subject matter of the contract was a consumer contract for home improvement, specifically for waterproofing services in Bender's basement. The subject matter is arguably "a fundamental aspect" of Bender's life because the repairs were performed at his primary residence. See Lahoud, 481 N.J. Super. at 44. On the other hand, a primary purpose of the contracted work was to protect Bender's "treasured train system," not to maintain "a necessity of everyday life." See ibid.

In assessing the parties' relative bargaining positions, courts consider "lack of sophistication, . . . bargaining tactics, and the particular setting existing during the contract formation process." Muhammad v. Cnty. Bank of Rehoboth Beach, 189 N.J. 1, 15 (2006) (citation omitted) (internal quotation marks

17

omitted). In this case, Bender was a consumer—an 86-year-old man with pulmonary conditions—at the time he signed the contract, while the defendants are established corporations with significant experience in basement waterproofing and related repairs. However, this alone is insufficient to prove that defendants had a bargaining advantage over Bender. Plaintiffs did not provide any evidence in the record suggesting Bender was "unsophisticated, confused or even had questions about the [a]greement's terms." Curtis v. Cellco P'ship, 413 N.J. Super. 26, 40 (App. Div. 2010); see also Lahoud, 481 N.J. Super. at 44 ("[P]laintiff has failed to present any facts that would show he had an unfair bargaining disadvantage or was manipulated in some way by the bargaining process.").

Regarding the third factor, the record is devoid of any evidence that Bender was under economic pressure to accept defendants' services or that he had no other meaningful option but to accept defendants' services. See Pace, 258 N.J. at 108 (holding that plaintiffs were not under economic pressure because they did not face "a monopolistic market," and did not put forth evidence showing that the subject apartment complex was the only one available to them).

The fourth, or "public interest factor[,] is the most important in determining whether a contract of adhesion is unconscionable." Lahoud, 481 N.J. Super. at 45 (citing Rudbart, 127 N.J. at 356; Muhammad, 189 N.J. at 19). This factor requires the court "to determine whether the effect of the arbitration clause provisions that significantly restrict discovery, limit compensatory damages, and prohibit punitive damages 'shield defendants from compliance with the laws of this State.'" Est. of Ruszala ex rel. Mizerak v. Brookdale Living Cmtys., Inc., 415 N.J. Super 272, 298 (App. Div. 2010) (quoting Muhammad, 189 N.J. at 19). Here, the ADR clause neither restricts discovery nor limits damages.

Accordingly, the balance of the factors weighs in support of a conclusion that the service agreement, and subsequently the ADR clause, were conscionable.

Unilateral Reservation of Rights Provision

This court has recently struck down a reservation of rights provision that exclusively benefited one party while depriving the other of same. Lahoud, 481 N.J. Super. 29. In Lahoud, plaintiff contracted with a construction company to build a swimming pool at his beachfront home. Id. at 36. The contract contained an ADR clause that required the parties to resolve any claims arising from or

19

related to the agreement through arbitration, except that the company was allowed to seek monetary damages through a court of law. Ibid. The reservation of rights provision read:

> NOTWITHSTANDING THE FOREGOING, WE RESERVE THE RIGHT AND MAY AT OUR DISCRETION EXERCISE THE RIGHT TO COMMENCE LEGAL ACTION IN ANY COURT OF COMPETENT JURISDICTION TO COLLECT MONIES YOU OWE UNDER THIS AGREEMENT, IN WHICH YOU AGREE TO WAIVE THE RIGHT TO MEDIATION OR ARBITRATION."
>
> [Id. at 37.]

This court concluded that the reservation of rights provision was unconscionable because the company "created an exception to arbitration only for itself the power to pursue a claim for money damages—and potentially other claims—in court if plaintiff failed to pay [the company] under the contract while plaintiff may not seek relief in court under any circumstances." Id. at 46. That provision provided the company with an exclusive advantage because plaintiff was required to bring "all" of his claims in arbitration and could not assert a counterclaim or defense. Ibid. Because the provision constituted a "grossly unbalanced approach" and "a harsh and unfair one-sided term that lacks mutuality," it was held to be unconscionable and therefore unenforceable. Ibid. The Lahoud court concluded that the provision is severable because the terms

20

and conditions section of the contract contained a severability clause and the remainder of the contract would be capable of enforcement without the violative provision. Id. at 47-48.

Here, defendants maintain the provision is conscionable because "Bender would be able to assert any defenses to such claims in that litigation," whereas the Lahoud agreement provided that "all of plaintiffs' claims must be brought in arbitration if mediation is unsuccessful." Plaintiffs submit that Lahoud supports the conclusion that the ADR provision, in its entirety, is unenforceable.

Our analysis of the ADR clause renders the reservation provision unconscionable and severable. First, the ADR clause provided that "any claim, dispute, or other matter in controversy arising out of or related to this [c]ontract or breach thereof shall be settled by arbitration" but "[i]f payment in full is not made when due, [c]ontractor is entitled to proceed with litigation and may recover all expenses of collection, including attorneys' fees, court costs, court reporter fees, and expert witness fees, in such amount as the court may adjudge reasonable." (Emphases added). As it stands, this provision entitles only the contractor to seek judicial relief on certain claims while requiring plaintiffs to arbitrate "any" claim, including counterclaims or defenses. This is precisely the kind of "grossly unbalanced approach" invalidated by the Lahoud court. Ibid.

21

Second, the "Terms and Conditions" section of the contract contains a "Miscellaneous" provision, which reads: "If any term, condition, or provision of this [c]ontract is found unenforceable by a court of law or equity, this [c]ontract shall be construed as though that term, condition, or provision did not exist, and its unenforceability shall have no effect whatsoever on the rest of this [c]ontract." Thus, the provision is severable and "[s]triking the reservation of rights provision would leave behind a 'clear residue that is manifestly consistent with the central purpose of the contracting parties, and that is capable of enforcement.'" Id. at 48 (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)).

In sum, the ADR provision is enforceable, except for the invalid reservation provision that is severable. Because defendants did not invoke the reservation provision, the arbitration may proceed.

Arbitrable claims

"An agreement relating to arbitration should . . . be read liberally to find arbitrability if reasonably possible" and "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Jansen v. Salomon Smith Barney, Inc., 342 N.J. Super. 254, 258 (App. Div. 2001) (citations omitted). "Arbitrability of a particular claim depends not upon the

22

characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause." Ibid. (citations omitted) (internal quotation marks omitted).

Plaintiffs assert that our Court's holding in Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001) supports their position that their contractually-related claims are not subject to mandatory arbitration. Their reliance on Garfinkel is misplaced. In Garfinkel, our Supreme Court held that a party may not be compelled to arbitrate a statutory claim where that claim is unrelated to the subject matter of the contract and the arbitration clause does not reference statutory claims. 168 N.J. at 134. Here, all of plaintiffs' claims are related to the subject matter of the contract, namely waterproofing services.

The contract and tort claims, including breach of contract, negligence, gross negligence, and wrongful death are not immune from arbitration. "[C]ourts have construed broadly worded arbitration clauses to encompass tort [and] contract claims." Alfano v. BDO Seidman, LLP, 393 N.J. Super. 560, 575 (App. Div. 2007); see Wasserstein v. Kovatch, 261 N.J. Super. 277, 286 (App. Div. 1993) (holding that common law claims "have been held arbitrable when they relate to the making or performance of a contract with an arbitration

23

clause"). The claims of fraud, fraudulent misrepresentation, fraudulent inducement, and negligent misrepresentation are also arbitrable. Grandvue Manor, LLC v. Cornerstone Contracting Corp., 471 N.J. Super. 135, 146 (App. Div. 2022) (holding that a clear and unambiguous arbitration clause covers claims of fraud and negligent misrepresentation); Van Syoc v. Walter, 259 N.J. Super. 337, 339 (App. Div. 1992) ("[A]bsent a claim of fraud directed at the arbitration clause itself, a claim of fraud in the inducement of the contract is a matter for the arbitrators.").

The more nuanced question is whether the Consumer Fraud Act ("CFA") claim, a statutory claim, is covered by the ADR clause. While waivers of "statutory rights 'must be clear and explicit,' such waivers need not specifically refer to every imaginable statute." Curtis, 413 N.J. Super. at 37 (quoting Gras, 346 N.J. Super. at 54, 56); see also Atalese, 219 N.J. at 447 (holding that an arbitration clause need not identify "the specific constitutional or statutory right guaranteeing a citizen access to the courts that is waived by agreeing to arbitration").

However, an ADR provision that requires arbitration of "any controversy arising out of, or relating to, this Agreement or the breach thereof" does not definitively indicate the parties intended to waive statutory rights. Garfinkel,

24

168 N.J. at 135. "To pass muster, . . . a waiver-of-rights provision should at least provide that the [parties] agree[] to arbitrate <u>all statutory claims</u> arising out of the" agreement. <u>Ibid.</u> (emphasis added); <u>see also</u> <u>Gras</u>, 346 N.J. Super. at 47, 57 (holding that an arbitration agreement specifically requiring arbitration of "any claim or dispute based on a federal or state statute" is enforceable). Alternatively, statutory claims that "are founded on facts no different than the breach of contract claims" are subject to arbitration, even if the ADR provision does not explicitly reference a waiver of "statutory claims" or "statutory rights." <u>Caruso v. Ravenswood Devs., Inc.</u>, 337 N.J. Super. 499, 508 (App. Div. 2001) (holding that the consumer fraud and RICO claims are subject to arbitration because "plaintiffs rely on the same facts to support the breach of contract, consumer fraud and RICO claims").

As evidenced in plaintiffs' complaint, the CFA claim is based on the very same alleged conduct that supports the claims of fraud, fraudulent misrepresentation, fraudulent inducement, and negligent misrepresentation, all of which are arbitrable claims. More specifically, defendants' purported misrepresentations regarding their licensure and the conditions of the property that were recited in the consumer fraud claim also formed the basis of the aforementioned claims. "Although plaintiffs couch the claims in the relevant

A-0078-24

statutory language, it is apparent that the claims are subsumed in the subject matter of the arbitration agreement between the parties." Ibid.

Overall, this court has consistently held that the objectives of the CFA in rooting out fraud and compensating victims can be vindicated in the arbitration forum. Gras, 346 N.J. Super. at 52 ("There is no inherent conflict between arbitration and the underlying purposes of the CFA."); Curtis, 413 N.J. Super. at 37 ([I]t is well-established that CFA claims may be the subject of arbitration and need not be exclusively presented in a judicial forum.); Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577, 580 (App. Div.), certif. denied, 181 N.J. 545 (2004). Thus, all of plaintiffs' claims are typically subject to arbitration.

In sum, we conclude: (1) the ADR clause clearly waived plaintiff's right to bring suit on all ten causes of action; (2) the reservation of rights provision is unconscionable and unenforceable; and (3) the reservation of rights provision is severed from the contract, but the arbitration can nonetheless proceed.

Affirmed in part, reversed in part, and remanded for entry of an order consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-0078-24